## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| ORVILLE ADAMS, | |
|       Petitioner, | Case No. 16- |
| vs. | Hon. Sue E. Myerscough, |
| UNITED STATES OF AMERICA, | United States District Judge, Presiding |
|       Respondent. | |

### MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255

Now comes the Petitioner, Orville Adams, by his attorney, George Taseff, and moves the Court to vacate the sentence imposed in *United States v. Adams*, No. 05-30088. The Court found Mr. Adams a career offender based, in part, on an Illinois conviction for aggravated battery in violation of 720 ILCS § 5/12-4(b)(8), now codified as 720 ILCS § 5/12-3.05(c). That offense does not have as an element the use, attempted use, or threatened use of physical force against the person of another. Following the Supreme Court's opinion in *Johnson v. United States*, 135 S.Ct. 2551 (2015), the career offender residual clause is no longer good law, and Mr. Adams is not a career offender.

# I.   Procedural Background

*Original criminal case and sentencing[1]*

Mr. Adams pled guilty in the United States District Court for the Central District of Illinois, Springfield Division, to possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). (PSR ¶ 4) The presentence report found Mr. Adams to be a Career Offender based on prior convictions for aggravated battery and unlawful possession with intent to deliver a controlled substance. (PSR ¶ 49)

The career offender enhancement increased Mr. Adams's base offense level from 24 to 31. (PSR ¶¶ 48, 51) The PSR calculated a criminal history category of VI both with and without the career offender enhancement. (PSR ¶ 71, 72) An offense level of 24 and a criminal history category of VI results in a guideline range of 100 to 125 months of imprisonment. An offense level of 31 and criminal history category of VI resulted in a guideline range of 188 to 235 months of imprisonment. (PSR ¶ 130) Judge Scott adopted the PSR's' guideline calculations. (SOR p. 1) She then imposed a sentence of 169 months of imprisonment, followed by a 6 year term of supervised release. (dkt entry 16) Mr. Adams did not file a direct appeal, nor has he filed a prior motion under § 2255.

---

[1] Record citations in this section of the pleading refer to the docket sheet in Case No. 05-30088, and the original presentence report filed in that case.

On June 10, 2016, Mr. Adams filed a letter with the Court asking for the appointment of counsel to assist in determining if he was eligible for relief based on *Johnson*. (dkt entry 29) The Court appointed undersigned counsel to investigate whether Mr. Adams is eligible for relief under § 2255 based upon *Johnson*. (Text Order dated 6/10/2016) Pursuant to that order, Mr. Adams files this motion.

## II.  Ground One: Mr. Adams's Sentence Was Imposed in Violation of the Due Process Clause of the Fifth Amendment, Because It Relied Upon the Unconstitutionally-Vague Residual Clause to U.S.S.G. § 4B1.2(a).

Mr. Adams's sentence should be vacated because it was imposed based upon a determination that his prior conviction for mob action presented a serious potential risk of physical injury to another, an unconstitutionally-vague standard. Below, we first summarize the rule of *Johnson* and explain why its holding as to 18 U.S.C. § 924(e) applies with equal force to the identical residual clause of U.S.S.G. § 4B1.2(a). Next, we explain why a claim under *Johnson* is cognizable for a petitioner who was sentenced under the sentencing guidelines

as a career offender. Finally, we take a look at the particulars of Mr. Adams's

sentence and explain why it must be vacated.

### A. *Johnson* holds that the residual clause of § 924(e) is unconstitutionally vague.

In *Johnson v. United States*, the Supreme Court held that the residual clause

to § 924(e)(2) was unconstitutionally vague because the process by which courts

had categorized prior convictions as violent felonies was too "wide-ranging" and

"indeterminate." 135 S. Ct. 2551, 2557 (2015). As a result, § 924(e)(2) "both denies

fair notice to defendants and invites arbitrary enforcement by judges." *Id*. The

Court concluded that its four previous attempts to articulate a workable test to

determine whether a felony falls under the residual clause of § 924(e)(2) had

failed. *Id*. at 2558–59.

The Court began its analysis by explaining that, under *Taylor v. United

States*, 495 U.S. 575 (1990), section 924(e)(2) required use of the categorical

approach to determine whether a particular statute qualifies as a violent felony.

*Id*. at 2557. (Despite the government's invitation, the Court declined to jettison

the categorical approach in residual clause cases.) Under the categorical

approach, courts must assess whether a crime qualifies as a violent felony "in

terms of how the law defines the offense and not in terms of how an individual

might have committed it on a particular occasion." *Id*.

4

The Court further explained that the residual clause "requires a court to picture the kind of conduct that the crime involves 'in the ordinary case,' and to judge whether that abstraction presents a serious risk of potential injury." *Id.* (citation omitted). That framework stemmed from *James v. United States*, 550 U.S. 192 (2007), in which the Court held the inquiry was "whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another. … As long as the offense is of a type that, by its nature, presents a serious risk of injury to another, it satisfies the requirements of § 924(e)(2)(B)(ii)'s residual provision." *James*, 550 U.S. at 208–09.

In *Johnson*, the Court concluded that process was fatally flawed, for two principal reasons. First, there was "grave uncertainty" as to how to estimate the risk posed by a crime in the judicially-imagined "ordinary case." *Johnson*, 135 S. Ct. at 2557. Characterizing that endeavor as "speculative," the Court found that the "residual clause offers no reliable way to choose between … competing accounts of what 'ordinary' … involves." *Id.* at 2558. Though earlier cases had tried to rely on statistical analysis and "common sense," the Court in *Johnson* noted that those methods "failed to establish any generally applicable test that prevents the risk comparison required by the residual clause from devolving into guesswork and intuition." *Id.* at 2559.

Second, there was no indication of the quantum of risk required by the residual clause. *Id*. The residual clause of § 924(e) lacked a meaningful gauge for determining whether the degree of risk under the "ordinary case" of a particular statute was enough to constitute a serious potential risk of physical injury. *Id*. at 2558. Although the level of risk was required to be similar to the enumerated offenses of burglary, arson, extortion, or crimes involving the use of explosives, the Court in *Johnson* rejected the notion that comparing a felony's "ordinary case" to the risk posed by certain enumerated offenses cured the constitutional problem. *Id*. Ascertaining the risk posed by the enumerated offenses required just as much guesswork as determining the risk of the "ordinary" predicate offense.

The indeterminacy about how to measure the risk and the indeterminacy about what level of risk qualified led to the conclusion that "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id*.

**B.    The identical residual clause of § 4B1.2(a) is equally unconstitutional following *Johnson*.**

The residual clause of U.S.S.G. § 4B1.2(a) is unconstitutionally vague under the principles of *Johnson*. The Due Process Clause prohibits the imposition of a penalty "based on an arbitrary distinction." *Chapman v. United States*, 500 U.S.

453, 465 (1991); *see also Townsend v. Burke*, 334 U.S. 736, 740 (1948). And the phrase "otherwise involves a serious potential risk of physical injury to another" produces "more unpredictability and arbitrariness than the Due Process Clause tolerates." *Johnson*, 135 S. Ct. at 2558. The Seventh Circuit, like other courts of appeals, has treated the identical residual clauses in § 924(e) and § 4B1.2(a) interchangeably. *United States v. Griffin*, 652 F.3d 793, 802 (7th Cir. 2011).

Under even an advisory Guidelines system, district courts are still required to "begin all sentencing proceedings by correctly calculating the applicable Guidelines range" and to use the guidelines as "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Peugh v. United States*, 133 S. Ct. 2072, 2084 (2013). The use of a vague sentencing guideline to calculate the guidelines range violates due process because it leads to unpredictable and arbitrary applications of the legal framework for sentencing. *See Johnson*, 135 S. Ct. at 2557.

A line of cases from the Seventh Circuit culminating in *United States v. Tichenor*, 683 F.3d 358 (7th Cir. 2012), suggests that the Guidelines are not susceptible to vagueness challenges. But *Tichenor* predated both *Peugh* and *Johnson* and is fatally undermined by those cases. Vagueness principles "apply not only to statutes defining elements of crimes, but also to statutes fixing

7

sentences." *Johnson*, 135 S. Ct. at 2557. And in *Peugh*, the Court rejected an argument that the guidelines were merely "guideposts" that lacked "the force and effect of laws" in holding that the Ex Post Facto Clause applies to advisory guidelines. 133 S. Ct. at 2078, 2085–86.

Moreover, the Guidelines "are the equivalent of legislative rules adopted by federal agencies." *Stinson v. United States*, 508 U.S. 36, 45 (1993). Agency regulations, notably, are subject to the vagueness doctrine. *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012). There is no longer any principled basis to say that the Guidelines are not subject to challenges on vagueness grounds.

We expect the government to agree that the reasoning of *Johnson* applies with equal force to the residual clause of § 4B1.2(a). In *United States v. Gillespie*, No. 15-1686 (7th Cir.), and numerous other cases across the country, the Department of Justice has conceded that *Tichenor* no longer represents good law in light of *Johnson* and *Peugh* and has asked the Seventh Circuit to find that a sentence cannot be sustained if it was based upon a career-offender determination relying on the residual clause. *Gillespie* was argued on December 2, 2015, but no decision has been announced. The Seventh Circuit assumed Johnson's reasoning applied to the career offender residual clause in *Ramirez v. United* States, 799 F.3d 845, 856 (7th Cir. 2015). And, in *United States v. Vivas-Ceja*, 808 F.3d 719, 720 (7th Cir. 2015), the Seventh Circuit found *Johnson* applied to 18

U.S.C. § 16(b)'s "residual clause" which defined a crime of violence, in part, as "any . . . offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or properly of another may be used in the course of committing the offense." Other courts of appeals have largely agreed that *Johnson* should apply to the guidelines. *See, e.g., United States v. Grayer*, __ Fed.Appx. __, 2015 WL 5472743, at **2–3 (6th Cir. Sep. 17, 2015); *United States v. Maldonado*, 2016 WL 229833 (2d Cir. Jan. 20, 2016); *United States v. Talmore*, No. 13-10650, Order (9th Cir. Aug. 24, 2015); *but see United States v. Matchett*, 802 F.3d 1185 (11th Cir. Sep. 21, 2015).

### C. *Johnson* entitles career offenders to relief under § 2255.

Supreme Court case law compels the conclusion that *Johnson's* new substantive rule applies retroactively, and is cognizable in a § 2255 petition. Under § 2255, relief is appropriate for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004); *see* 28 U.S.C. § 2255(a). As we have noted above, *Johnson* announced that the residual clause to § 924(e) is unconstitutionally vague and thus denies due

process to those sentenced under its provision. This petition thus raises a

constitutional claim under § 2255.

      i.     *Johnson's* new rule is substantive and therefore retroactive.

A Supreme Court decision applies retroactively to cases on collateral

review if it announces a "new" rule that is "substantive." *Schriro v. Summerlin*, 542

U.S. 348, 351 (2004). In *Welch v. United States*, 136 S.Ct. 1257 (2016), the Supreme

Court held that the rule announced in *Johnson* satisfies both of those

requirements and therefore applies retroactively to cases on collateral review.

If a new rule is substantive, it must be applied retroactively to all cases on

collateral review. See *Danforth v. Minnesota*, 552 U.S. 264, 266 (2008) ("New

constitutional rules announced by [the Supreme] Court that [are substantive or

watershed rules of criminal procedure] must be applied in . . . all federal habeas

corpus proceedings."); *Davis v. United States*, 131 S. Ct. 2419, 2430 (2011)

(retroactivity is a "categorical matter"); *Teague v. Lane*, 489 U.S. 288, 316 (1989)

(new rule must "be applied retroactively to all defendants on collateral review

through one of the two exceptions we have articulated"). As the Third Circuit

aptly put it: "Under *Teague*, either a rule is retroactive or it is not." *United States v.

Doe*, 810 F.3d 132, 154 n.13 (3d Cir. 2015) (holding that *Begay* is retroactive in a

guidelines case). As the Supreme Court has found *Johnson* retroactive, it applies retroactively to *all* cases on collateral review.

ii. Mr. Adams's constitutional claim is cognizable in a § 2255 petition.

A federal prisoner may move to "vacate, set aside or correct" his sentence if it "was imposed in violation of the Constitution." 28 U.S.C. § 2255(a).  Mr. Adams's sentence was imposed in violation of the Constitution because it was predicated on the residual clause, the residual clause is "unconstitutionally vague," and "imposing an increased sentence under the residual clause . . . violates the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2563. As demonstrated above, *Johnson's* constitutional holding regarding ACCA's residual clause applies to the identically worded residual clause in USSG § 4Bl.2(a).  Thus, Mr. Adams's claim for relief is cognizable under the plain language of § 2255(a).

**D.    Following *Johnson*, Mr. Adams is no longer a career offender and is entitled to be resentenced.**

To determine whether a predicate offense qualifies as a "crime of violence" under § 4B1.2, courts use the categorical approach. *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *United States v. Johnson*, 743 F.3d 1110, 1111 (7th Cir. 2014); see also *United States v. Royal*, 731 F.3d 333, 341-42 (4th Cir. 2014); *United States v. Serafin*, 562 F.3d 1105, 1107-08 (10th Cir. 2009); *United States v. Acosta*, 470

11

F.3d 132, 135 (2d Cir. 2006). This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." *Descamps*, 133 S. Ct. at 2283 (citation omitted); *Johnson*, 743 F.3d at 1111; *Royal*, 731 F.3d at 341-42; *Serafin*, 562 F.3d at 1107; *Acosta*, 470 F.3d at 135. In addition, under the categorical approach, a prior offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute – "including the most innocent conduct" matches or is narrower than the "crime of violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

At the time of Mr. Adams' offense, Illinois defined aggravated battery in relevant part as a battery committed when the defendant "[i]s, or the person battered is, on or about a public way, public property or public place of accommodation or amusement." 720 ILCS § 5/12-4(b)(8)[1]; *People v. Espinoza*, 702 N.E.2d 1275 (Ill. 1998). Battery was, and still is, defined as "intentionally or

---

[1]Currently codified as 720 ILCS § 5/12-3.05(c).

knowingly without legal justification and by any means, (1) caus[ing] bodily

harm to an individual or (2) mak[ing] physical contact of an insulting or

provoking nature with an individual." 720 ILCS § 5/12-3.

Post-*Descamps*, it is clear that for an Illinois aggravated battery to qualify as

a "crime of violence" under § 4B1.2(a)(1)'s force clause the offense must have an

element of  "physical force." And "physical force" means "*violent* force" – that is

"strong physical force," which is "capable of causing physical pain or injury to

another person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in

original). Illinois' aggravated battery statute does not meet this requirement

because it can be accomplished "by any means" that result in "bodily harm"

which does not require the use, attempted use, or threatened use of "violent

force."

The Second Circuit's decision in *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194

(2d Cir. 2003), is directly on point. In that case at issue was whether a prior

Connecticut conviction for third degree assault qualified as a "crime of violence"

under the force clause. The Connecticut statute "require[s] the state to prove that

the defendant had intentionally caused physical injury." *Chrzanoski*, 327 F.3d at

193. Nonetheless, the "Second Circuit [] held that [the statute] does not constitute

a crime of violence . . . because there is a difference between causation of an

injury, which is all that the Connecticut statute [] required, and an injury's

causation by the use of physical force." *Chrzanoski*, 327 F.3d at 194 (internal quotation marks omitted).

The Second Circuit explained that "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission." *Id*. At 195. The Court elaborated that "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient" or someone who causes physical impairment by placing a tranquilizer in the victim's drink. *Id*. at 195-56.

The Tenth Circuit reached the same conclusion in *United States v. Perez-Vargas*, 414 F.3d 1282, 1287 (10th Cir. 2005). In that case, the Tenth Circuit "explained that although the Colorado [third degree assault] statute required [an act causing] bodily injury, imposing that injury does not necessarily include the use or threatened use of physical force as required by the Guidelines and so the Colorado crime was not categorically a crime of violence under U.S.S.G. § 2L1.2." *Perez-Vargas*, 414 F.3d at 1287 (internal quotation marks omitted). The Tenth Circuit reasoned that "several examples [exist] of third degree assault that would not use or threaten the use of physical force: . . . intentionally placing a barrier in

14

front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." *Perez-Vargas*, 414 F.3d at 1286.

The Fourth Circuit's decision in *Torres-Miguel*, 701 F.3d 165, also comes to the same conclusion. Indeed, in that case, the Fourth Circuit unequivocally held that the threat of any physical injury, even "serious bodily injury or death," does not necessarily require the use of physical force – let alone "violent force."

In *Torres-Miguel*, at issue was the defendant's prior conviction for the California offense of willfully threatening to commit a crime which "will result in death or great bodily injury to another." 701 F.3d at 168 (citing Cal. Penal Code § 422(a)). The specific question in the case was whether the statute had an element equating to a threat of "violent force" under the force clause of U.S.S.G. § 2L1.2 – a clause that is identical in all relevant respects to the § 924(e)(2)(B)(i) force clause. *Id*. Despite the "death or great bodily injury" element in the California statute, the Fourth Circuit found that the offense was missing a "violent force" element, and thus, could never qualify as a "crime of violence" under the force clause. *Id*. at 168-69. The Court blanketly held that "[a]n offense that results in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence." *Id*. at 168. The

Court, in strong words, proclaimed that "of course, a crime may result in death or serious injury without involving use of physical force." *Id.* (emphasis added).

The Court, relying on *Chrzanoski* and *Perez-Vargas*, reasoned that there are many ways in which physical injury – even death – can result without use of "violent force." *Id.* at 168-69. "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." *Torres-Miguel*, 701 F.3d at 168-69 (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)).

Therefore, all the cases discussed above command that aggravated battery, which can be accomplished "by any means" that result in "bodily harm," does not require "violent force." A defendant can cause bodily harm by poisoning that person, see *Mink v. University of Chicago*, 460 F.Supp. 713, 717-18 (D.C.Ill. 1978) (administering drug to patient without patient's knowledge or consent constitutes battery under Illinois law), or subjecting them to exposure to hazardous chemicals, see *Bond v. United States*, 134 S.Ct. 2077 (2014) (defendant attempted to harm victim through the use of toxic chemicals).

Because "the full range of conduct" covered by the aggravated battery statute does not require "violent force," it simply cannot qualify as a "violent felony" under § 4B1.2(a)(1)'s force clause. And it makes no difference that the possibility of violating the aggravated battery statute without violent physical

16

force is slim. Because the possibility exists, this Court cannot legally find that aggravated battery is a "crime of violence." Indeed, in *Torres-Miguel*, the Court did not cite to a single case in which an offense under the California threat statute was violated with the threat of poisoning or some other non-violent force; yet, the Fourth Circuit still found that because the elements of the offense left open the possibility that one could be prosecuted under the statute for the use of non-violent force, the prior offense categorically failed to qualify as a "crime of violence." *Id.* at 171. The Court should find the same here with respect to the aggravated assault statute, which leaves open the same possibility.

Mr. Adams acknowledges that the Seventh Circuit has found that a violation of the "cause bodily harm" prong of Illinois' aggravated battery statute is a violent felony under the Armed Career Criminal Act. *United States v. Humphreys*, 468 F.3d 1051, 1055 (7th Cir. 2006); *Hill v. Werlinger*, 695 F.3d 644, 649-50 (7th Cir. 2012); see also *United States v. Rodriguez-Gomez*, 608 F.3d 969, 973-74 (7th Cir. 2010) (finding Illinois aggravated battery charged under the causing bodily injury prong of statute "crime of violence" under career offender guideline under force clause of § 4B1.2((a)(1) which is identical to ACCA).  Mr.

Adams submits the rationale used in these cases has been rejected by the

Supreme Court in *Descamps*.

    *Humphrey* and *Hill* acknowledge that an "offensive touching" violation of

the battery statute would not involve the use of force.  Accordingly, both cases

purport to use the modified categorical approach to determine if the defendant

was convicted of a battery causing bodily injury or a battery involving an

offensive touching.  *Humphrey*, 468 F.3d at 1055; *Hill*, 695 F.3d at 649. In both

cases the Court concluded the defendant had been convicted under the causing

injury prong of the statute. Both cases then went on to look to the charging

document to see the manner in which the battery was alleged to have been

committed and then determined that the conduct engaged in by the defendant

involved the use of force.  *Humphrey*, 468 F.3d at 1055 (quoting language from

charging document that defendant struck the victim in the head with a gun and

then finding these allegations showed the "conviction involved the use of force);

*Hill*, 695 F.3d at 649 (quoting charging document that alleged the defendant

caused bodily injury to the victim by hitting her "in the back of her head with his

hand"). *Descamps* rejected this version of the modified categorical approach,

dubbing it a "modified factual approach."

    "[T]he 'modified categorical approach' [the Supreme Court has] approved

permits a court to determine which statutory phrase was the basis for the

conviction." *Johnson v. United States*, 559 U.S. 133, 144, 130 S.Ct. 1265, 1273 (2010) (citation omitted). "This rule is not meant to circumvent the categorical approach by allowing courts to determine whether the actual conduct of the individual defendant constituted [a crime of violence]." *United States v. Johnson*, 587 F.3d 203, 208 (3rd Cir. 2009). Once the modified categorical approach has allowed a reviewing court to identify the statutory phrase that formed the basis for the conviction, its purpose has been served and the reviewing court must then look to the elements of that portion of the statute to determine whether those elements make the statute a crime of violence. "The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Descamps*, 133 S.Ct. at 2285. "The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Id*. Accordingly, if the elements of aggravated battery do not require the use, attempted use, or threatened use of physical force against the person of another, it is not a violent felony under the force clause even if the defendant actually used physical force in committing the offense.

The Illinois Pattern Jury Instructions make clear that the use of force is not an element of aggravated battery on a public way. The relevant pattern

instruction for aggravated battery based on committing a battery on a public way is as follows:

> 11.15. Definition Of Aggravated Battery--While Armed, Hooded, Or Involving Specific Categories Of Victims
>
> A person commits the offense of aggravated battery when he [(intentionally) (knowingly)] [without legal justification] and by any means (causes bodily harm to) (makes physical contact of an insulting or provoking nature with)] another person, and
>
> [8a] in doing so, he is on or about [(a public way) (public property) (a public place of accommodation) (a public place of amusement)].

Ill. Pattern Jury Instr. - Criminal 11.15.  Nothing in this instruction requires the jury to find that the defendant used, attempted to use, or threatened to use physical force against the victim.  All that is required is the causation "by any means" of bodily injury. And, as explained above, there are numerous ways the statute can be violated without the use of force.

*Rodriguez-Gomez*, makes the statement that a violation of the "caused bodily injury" prong of the statute "requires the 'use, attempted use, or threatened use of physical force,'" 608 F.3d at 974, but it cites no Illinois case law to support that proposition.  And, as explained above, the statement is simply wrong.  Illinois does not care how the defendant causes great bodily harm, permanent disability, or permanent disfigurement, just that he does.

20

Accordingly, the statute does not have as an element the use of force and Mr.

Adams is not a career offender.

The fact that the defendant may have actually used force in committing the

offense, and may have admitted to that when pleading guilty, is irrelevant under

the categorical approach. *Descamps* makes clear that even when applying the

modified categorical approach to determine if a prior conviction meets ACCA's

definition of violent felony, the only facts a defendant admits are the facts

necessary to establish the elements of the offense to which the defendant is

pleading guilty. Any other factual averments made by the prosecution either

agreed to by the defendant or not objected to by the defendant cannot be used to

determine that the conviction meets ACCA's definition of violent felony.

*Descamps*, 133 S.Ct. at 2288-89 ("when a defendant pleads guilty to a crime, he

waives his right to a jury determination of only that offense's elements; whatever

he says, or fails to say, about superfluous facts cannot license a later sentencing

court to impose extra punishment"). Accordingly, the fact that a charging

document may allege, and the defendant admit, facts that would establish the

actual use of force when committing the offense is irrelevant under the

categorical approach. "The key . . . is elements, not facts." *Id*. at 2283.

Prior to *Johnson*, the argument as to whether an Illinois aggravated battery

had as an element the use, attempted use or threatened use of physical force

against the person of another was academic.  There is no doubt that an Illinois aggravated battery based on causing bodily injury qualified as a crime of violence under the career offender residual clause as it more than satisfied the residual clause' requirement that the offense create a serious potential risk of physical injury to another.  The offense doesn't just involve a risk of physical injury, it requires, as an element, actual physical injury.  Accordingly, prior to *Johnson* there was no point in arguing that an Illinois aggravated battery based on causing bodily harm was not a violent felony because it did not have as an element the use of force. Post-*Johnson*, that is no longer the case.   Mr. Adams was designated a career offender based upon two (and only two) predicate convictions: aggravated battery, and possession with intent to deliver a controlled substance. Because aggravated battery is no longer a crime of violence following *Johnson*, Mr. Adams had only sustained one crime of violence prior to committing the federal offense. He therefore should not have been sentenced as a career offender.

"The imposition of the career offender status branded Mr. [Adams] as a malefactor deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual who had committed the same offense." *Narvaez v. United States*, 674 F.3d 621, 629 (7th Cir. 2011). Mr. Adams's guidelines range would have been 100 to 125 months without the designation;

but the career offender status "illegally increased Mr. [Adams's] sentence approximately [7] years beyond that authorized by the sentencing scheme" to a range of 188 to 235 months. *Id*. at 630. Mr. Adams's claim therefore "goes to the fundamental legality of his sentence and asserts an error that constitutes a miscarriage of justice, entitling him to relief." *Id*.

III.    **The Court is Authorized to Consider this § 2255 Motion.**

A one-year limitation period applies to motions under § 2255, running from, *inter alia*, the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. 28 U.S.C. § 2255(f)(3). This petition is filed within one year of the Supreme Court's decision in *Johnson*, which announced a new rule and has been made retroactively applicable to cases on collateral review. *Welch v. United States*, 136 S.Ct. 1257 (2016). It is therefore timely.

Respectfully submitted,

ORVILLE ADAMS
Petitioner

BY:    /s/George F. Taseff
GEORGE F. TASEFF
Assistant Federal Public Defender
401 Main Street, Suite 1500
Peoria, Illinois  61602
Telephone: (309) 671-7891
Facsimile: (309) 671-7898
Email: george_taseff@fd.org

### CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorney Gregory M. Gilmore.

 /s/ George F. Taseff
GEORGE F. TASEFF
Assistant Federal Public Defender